UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ryan O. Moody,                                            Case No. 3:24-cv-18

                 Plaintiff,

v.                                                           MEMORANDUM OPINION
                                                                  AND ORDER

Officer Nathan Kaczmarek, et al.,

                 Defendants.

## I.     INTRODUCTION

Before me is a motion for judgment on the pleadings of all claims asserted by Plaintiff Ryan O. Moody against Defendant Manahan and its employees, Defendants Tamara Wittkofske, April Fulton, and Brittany Rysz (collectively, the "Manahan Defendants"). (Doc. No. 15). Moody filed a brief in opposition, (Doc. No. 17), and the Manahan Defendants replied. (Doc. No. 18).

## II.     BACKGROUND

On October 28, 2021, Moody accepted an offer letter for full-time employment as a Direct Support Professional at Manahan, which Moody alleges is a group home providing care to adults with developmental disabilities. (Doc. No. 1 at 6; Doc. No. 13-1). Moody's first day was November 1, 2021. (*See* Doc. No. 13-2). On this day, he signed a document acknowledging he had received the Manahan Employee Handbook and would follow the policies and rules in it. (*Id.*).

Both the offer letter, which Moody accepted by signature, and the Handbook Acknowledgment bearing Moody's signature provide that Moody's employment was "at will." (Doc. Nos. 13-1 and 13-2). Specifically, the offer letter states:

> Please note that your employment with the Company is for no specified period, and constitutes "at will" employment. As a result, you are free to resign at any time, for any reason or for no reason. Similarly, the Company is free to terminate its employment relationship with you at any time, with or without cause.

(Doc. No. 13-1 at 2).

And the Handbook Acknowledgement states:

> This handbook should not be construed as, and is not intended as, a contract guaranteeing employment for any specific duration. All employees are employees at will in accordance with applicable laws. This means that I am free to terminate employment at any time, with or without cause or notice, and Manahan retains the same right. The decision to discharge remains within the sole discretion of Manahan. Nothing in this Handbook modifies the employment-at-will relationship or creates any contract of employment, either expressed or implied.

(Doc. No. 13-2 at 2).

On February 11, 2022, Moody exercised his right to resign his employment and resigned via email stating, in full:

> Im going to miss you guys. This is my resignation effective immediately. I learned a lot but the stress of everything going on there and the changes being made made my decision an not so easy one that is going to be good for me and my family in the long run. I apologize for the short notice.

(Doc. No. 13-3 at 2) (in original form).

The Complaint implies that "everything going on there" stemmed from an allegation of sexual misconduct made by a resident of Manahan against Moody. That is, through the Complaint, Moody suggests Manahan should have: (1) conducted a further internal investigation into the allegation before involving law enforcement; and (2) taken action to stop its employees from gossiping about the situation. He also faults the individual Defendant employees for partaking in such gossip and falsely accusing him of the illicit conduct.

### III. STANDARD

Motions for judgment on the pleadings filed under Rule 12(c) of the Federal Rules of Civil Procedure are subject to the same standard as a Rule 12(b)(6) motion to dismiss. *JPMorgan Chase*

*Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). Under this standard, a lawsuit may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

To survive a motion to dismiss, the plaintiff must offer more than conclusory allegations or legal conclusions masquerading as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (The complaint must contain something more than "a formulaic recitation of the elements of a cause of action."). Instead, the complaint must state sufficient facts which, when accepted as true, state a claim "that is plausible on its face." *Iqbal*, 556 U.S. at 678 (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct). Even though the factual allegations need not be "detailed," *Bell*, 550 U.S. at 555, "the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Eidson v. Tenn. Dept. of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

When adjudicating a Rule 12 motion, the court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Additionally, because "a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," Fed. R. Civ. P. 10(c), those "written instruments" attached the Answer may also be considered when ruling on a motion for judgment on the pleadings. *See Bureau of*

3

*Consumer Fin. Prot. v. Fifth Third Bank, N.A.*, No. 1:21-cv-262, 2023 WL 7325956, at *3-*4 (S.D. Ohio Sept. 26, 2023). To be clear, not every "document" attached to an answer is a "written instrument" incorporated under Rule 10(c). *See Steverson v. Walmart*, No. 3:19-cv-00140, 2019 WL 3822179, at *2-*3 (M.D. Tenn. Aug. 15, 2019) (collecting cases).

If a defendant presents an exhibit that is not incorporated under Rule 10(c) or that is not "referred to in the Complaint and . . . central to the claims contained therein," *Bassett*, 528 F.3d at 430, it may be considered only if the court treats the motion as one for summary judgment under Rule 56 and gives "[a]ll parties . . . a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "Where 'one party is likely to be surprised by the proceedings, notice is required,' but generally, '[w]hether notice of conversion of a motion to dismiss to one for summary judgment by the court to the opposing party is necessary depends upon the facts and circumstances of each case.'" *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1105 (6th Cir. 2010) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir. 1998)).

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### IV. DISCUSSION

Through this action, Moody seeks to bring claims against one or more of the Manahan Defendants for: (1) breach of contract; (2) negligence; (3) defamation; and (4) wrongful discharge. (Doc. No. 1). The Manahan Defendants move for judgment on the pleadings of each of these claims brought under Ohio common law.

#### A. DEFENDANTS' EXHIBITS

In support of their motion, the Manahan Defendants cite to the following exhibits attached to their Answer, (Doc. No. 13): (1) the October 28, 2021 offer letter, (Doc. No. 13-1); (2) the November 2, 2021 Handbook Acknowledgement, (Doc. No. 13-2); and (3) the February 11, 2022

resignation email. (Doc. No. 13-3). Moody does not challenge the Manahan Defendants' assertion that all of these exhibits may be considered at this stage. Still, I conclude it is necessary to briefly address that assertion.

First, the October 28, 2021 offer letter. (Doc. No. 13-1). Because this letter is the "contract" "referred to in the Complaint and [is] central to the claims contained therein," I may consider it when deciding the Manahan Defendants' motion under Rule 12. *Bassett*, 528 F.3d at 430.

Second, the November 2, 2021 Handbook Acknowledgement. (Doc. No. 13-2). Because this document defines the legal rights and obligations of Moody and Manahan with respect to the employment relationship, I conclude it is a "written instrument" incorporated into the Answer under Rule 10(c). *See Bureau of Consumer Fin. Prot.*, 2023 WL 7325956, at *3-*4; *Steverson*, 2019 WL 3822179, at *2-*3. Therefore, I may consider it when ruling on the motion under Rule 12.

And finally, the February 11, 2022 resignation email. (Doc. No. 13-3). This email was not referred to in the Complaint but instead contradicts Moody's Complaint allegation that "he was fired from his employment at Manahan." (Doc. No. 1 at 10). It also is not a "written instrument" under Rule 10(c) but a communication that adds further detail to the narrative. *See, e.g., Steverson*, 2019 WL 3822179, at *3. Therefore, I must either exclude this email from consideration or convert the motion for judgment on the pleading to one for summary judgment.

Here, the email has been introduced to show Moody resigned and was not "fired," as he alleged in his Complaint. (Doc. No. 1 at 10). In his opposition brief, Moody now concedes that he resigned. (Doc. No. 17 at 16). Because there is no genuine dispute on this point, any claim for which this is a material fact is ripe for summary judgment. *See* Fed. R. Civ. P. 12(d); Fed R. Civ. P. 56(a). Accordingly, I find it appropriate to convert the motion but only as to those claims for which resignation is a material fact – namely, those seeking relief for wrongful termination.

B.     BREACH OF CONTRACT

In the Complaint, Moody alleges Manahan breached the employment contract by terminating him before conducting an adequate investigation into the incident and by failing to pay him for time worked prior to the termination. (Doc. No. 1 at 9-10). But in his opposition brief, he abandons the first half of this claim, affirming he "is not arguing that there was a breach of contract for resignation of [his] employment, but rather that [Manahan] breach[ed] the agreement by failing to pay him for worked hours." (Doc. No. 17 at 9). There, Moody also clarifies the "contract" in question is the October 28, 2021 offer letter, which provides his "starting salary . . . is 13.00/ hr., paid bi-weekly." (Doc. No. 13-1 at 2).

Manahan replies to this narrowed argument by asserting the Complaint has not set forth sufficient facts to state a claim for unpaid wages and instead offers only a conclusory allegation to support such a claim. I agree.

Only the following four paragraphs of the Complaint relate to Manahan's alleged failure to pay Moody for hours worked:

> 60. Defendant contracted to pay Plaintiff for the hours that he worked at Manahan.
>
> 61. Before paying Plaintiff, Defendant terminated Plaintiff's employment contract without conducting an adequate investigation into the alleged incident.
>
> 62. Defendant breached its contract when it refused to pay Plaintiff for hours he had worked before termination.
>
> 63. As a result of breaching the contract by failing to pay him for worked hours, Plaintiff suffered monetary damages and loss wages.

(Doc. No. 1 at 6).

This is, at most, a recitation of elements. Moody fails to state any facts identifying any hours for which he worked but was not paid during his employment from his first day on November 1, 2021, through his resignation on February 11, 2022. While I appreciate that a complaint need not be "detailed," it must "give the defendant fair notice of what the . . . claim is and the grounds upon

6

which it rests." *Bell*, 550 U.S. at 555 (quotation omitted). The allegations in Moody's Complaint fail to clear this hurdle because they give Manahan no notice of what potentially compensable time remains unpaid. Therefore, I conclude judgment on the pleadings in warranted for Moody's breach of contract claim.

### C. NEGLIGENCE AND WRONGFUL DISCHARGE

Moody's negligence claim is based on his allegation that "Manahan owed a legal duty to Plaintiff to adequately investigate the allegations against Plaintiff before terminating Plaintiff's employment contract." (Doc. No. 1 at 10). Similarly, his wrongful termination claim is grounded in his allegation that Manahan "wrongfully terminated Plaintiff after the alleged incident without conducting an adequate investigation into the complaint." (*Id.* at 12).

Ultimately, both of these claims are the same claim – one of wrongful termination. Moody implicitly concedes as much, offering one analysis to defeat judgment on the pleadings of each of these claims. (Doc. No. 17 at 15-17). Because Moody identifies no authority recognizing the purported "legal duty" on which his negligence claim rests, I grant the Manahan Defendants judgment on the pleadings as to the negligence claim without further consideration and turn to the claim of wrongful termination. *See Strother v. Hutchinson*, 423 N.E.2d 467, 469 (Ohio 1981) (restating the well-settled rule that "in order to establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom.").

With respect to the claim of wrongful termination, the Manahan Defendants allege judgment on the pleadings is required because he was not terminated, he resigned. Still, Moody asserts the wrongful termination claim may survive because his resignation was actually a constructive discharge based on a hostile work environment. (Doc. No. 17 at 15-17). But in arguing as much, Moody cites only precedent under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA").

The problem with Moody's reliance on this case law is that Moody has not asserted a claim under either of these federal statutes. He also has stated no facts to suggest he could pursue such a claim. That is, even if his Complaint did state sufficient facts to show he was constructively discharged, he could satisfy only one of the four elements required to establish a prima facie case under either Title VII or the ADEA. *See, e.g., Shoap v. City of Crossville*, 321 F. Supp. 3d 839, 846 (M.D. Tenn. 2018) (setting forth the four Title VII elements and recognizing that while constructive discharge could satisfy the "adverse employment action" element, proving as much is "a tough road to hoe.") (quotation omitted); *Hale v. Mercy Health Partners*, 617 F. App'x 395, 399 (6th Cir. 2015) (restating the elements of a prima facie ADEA claim as "1) that she was a member of a protected class; 2) that she was discharged; 3) that she was qualified for the position held; and 4) that she was replaced by someone outside of the protected class.") (quotation omitted).

Like federal law, Ohio law does not recognize an independent cause of action for constructive discharge. *See Lucarell v. Nationwide Mut. Ins. Co.*, 44 N.E.3d 319, 331-32 (Ohio Ct. App. 2015) (*rev'd on other grounds*, 97 N.E.3d 458 (Ohio 2018)).

Ultimately, because there is no genuine dispute that Moody was not terminated but resigned, and because neither Ohio nor federal law recognize a stand alone claim of constructive discharge, Manahan is granted judgment as a matter of law on Moody's wrongful termination claim.

    D.    **DEFAMATION**

With Moody's remaining claim of defamation, he alleges the individual Manahan Defendants made defamatory statements about him and suggests Manahan itself is liable for those statements.

Like Moody's other claims discussed above, his defamation claim has morphed through the volley of briefing. But unlike those claims in which he narrowed his focus within the scope of the Complaint, Moody seeks to save his defamation claim from judgment on the pleadings by asserting

8

"facts" in his opposition brief that are not found in his Complaint or any exhibit before me. (*See* Doc. No. 17 at 11-14).

While Moody's reliance on these new assertions is understandable in the face of his clearly deficient Complaint, it is well-settled that "[p]laintiffs cannot . . . amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020). Therefore, I may not consider any of those assertions when determining whether judgment on the pleadings should be granted with respect to this defamation claim.

To state a claim of defamation under Ohio law, Moody must have set forth sufficient facts in the Complaint to show:

> (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that [he] suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement.

*Am. Chem. Soc'y v. Leadscope, Inc.*, 978 N.E.2d 832, 852 (Ohio 2012) (quotation omitted). "It is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not." *Id.* (internal brackets and quotation omitted).

The Complaint contains only one purportedly "false statement," asserting "April Fulton[] reported and made false accusations regarding Plaintiff, one alleging that Plaintiff was a 'rapist' and was escorted off the property of the group home following the allegations, which was a false fact." (Doc. No. 1 at 11). While Moody alleges Wittkofske and Rysz made "false accusations" and "false statements," respectively, he sets forth no facts to support these legal conclusions. (*Id.*). Because Moody offers nothing more than a recitation of elements with respect to Wittkofske and Rysz, the motion for judgment on the pleadings must be granted as to Moody's defamation claim against them.

9

Though Moody has arguably set forth sufficient facts to establish the first element of his claim against Fulton, he still falls short of his burden. Most notably, Moody fails to allege any facts showing to whom this statement was made. Without such information, I cannot conclude Fulton "published" the statement. *See, e.g., Rosado-Rodriguez v. Nemenz Lincoln Knolls Mkt.*, 159 N.E.3d 1214, 1222 (Ohio Ct. App. 2020) (citing *Hahn v. Kotten*, 331 N.E.2d 713, 718 (Ohio 1975)) ("Publication of a defamatory statement consists of communicating the statement to a person or persons other than the person who is the subject of the statement. . . . The defamatory statement not only must be communicated to a third person by the defendant, the listener must understand the defamatory nature of the statement including 'its actionable character.'").

Accordingly, I grant Fulton judgment on the pleadings of this claim. In turn, because Moody's defamation claim against Manahan is dependent on his claims against its employees, which all fail, I grant Manahan judgment on the pleadings of this claim, as well.

Having granted the Manahan Defendants judgment on the pleadings on the grounds discussed above, I need not consider their arguments regarding the one-year statute of limitations, the common interest privilege, or statutory immunity under Ohio Revised Code § 5123.61. Indeed, doing so would risk issuing an impermissible advisory opinion in the face of Moody's Complaint, which fails to state when or to whom any "false statement" was made. Still, I acknowledge that any of these defenses may foreclose a future attempt by Moody to take a second bite of the apple and amend his Complaint. I urge Moody to be mindful of this, as well, before seeking such relief.

## V. CONCLUSION

For the foregoing reasons, I grant the Manahan Defendants judgment of all claims asserted against them and dismiss them as Defendants to this action.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
